UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                  :

ALLIED WORLD SURPLUS LINES INSURANCE CO., :

                                  :

                  Plaintiff,              :

                                    :              23-cv-9992 (LJL)

            -v-                      :

                                    :        OPINION AND ORDER

ELAMEX USA, CORP. and MOUNT FRANKLIN    :

FOODS LLC,                           :

                                  :

                  Defendants.        :

                                  X
-------------------------------------------------------------------

LEWIS J. LIMAN, United States District Judge:

     Defendants Elamex USA, Corp. ("Elamex") and Mount Franklin Foods LLC ("Mount

Franklin," and with Elamex, "Defendants") move, pursuant to Federal Rule of Civil Procedure

12(b)(6), to dismiss the complaint ("Complaint") of Plaintiff Allied World Surplus Lines

Insurance Company ("Allied World" or "Plaintiff"), or, in the alternative, to transfer this case to

the United States District Court for Western District of Texas, pursuant to 28 U.S.C. § 1404(a).

Dkt. No. 14.

## BACKGROUND

     Allied World is an insurance company organized under the laws of the State of Arkansas

with its principal place of business in New York, New York.  Dkt. No. 1 ¶ 1.  Elamex is a

Delaware corporation with its principal place of business in Texas, *id.* ¶ 2, and Mount Franklin is

a subsidiary of Elamex, and a limited liability company organized under the laws of the State of

Texas, with its principal place of business in Texas, *id.* ¶¶ 3–4.  Elamex and Mount Franklin

manufacture various food products for non-party Mars Incorporated ("Mars"), including gummy

candies that it manufactures at its San Jerónimo facility (the "San Jerónimo Facility") located in

Jaurez, Mexico, under a Co-Manufacturing Agreement ("CMA") entered into between Mars and Elamex on January 1, 2021.  *Id.* ¶¶ 8, 24.

This insurance dispute arises out of a Notice of Claim letter sent to Defendants by Mars arising out of a product recall by Mars; the Notice of Claim was subsequently tendered to Plaintiff.  *Id.* ¶¶ 38–39.  Allied World provided insurance coverage to Elamex as a named insured and Mount Franklin as a named additional insured under the Allied World Surplus Lines Insurance Company Product Contamination Policy—Food and Beverage, bearing Policy Number 0313-1706, ("the Policy"), issued by Allied World to Elamex in effect for the period of December 1, 2021, to December 1, 2022.  *Id.* ¶¶ 8, 13.  The Policy covers the insureds for losses caused by an incident of "Accidental Contamination," "Malicious Contamination," or "Product Extortion," as those terms are defined in the Policy, that is first discovered and reported to Allied World during the policy period December 1, 2021 to December 1, 2022 or within sixty days thereafter.  *Id.* ¶ 15.

In their application for the Policy, submitted on October 29, 2021, Defendants answered "No" to Question 67, which asked whether "the Applicant, its principal(s), partner(s), officer(s), director(s) or manager(s) have knowledge or information of any current situation or circumstance which might lead to a claim under the proposed insurance."  *Id.* ¶ 9.  By submitting an application for the Policy, Defendants also agreed "that if the information supplied on this application changes between the date the application is executed and the time the proposed insurance policy is bound or coverage commences, the Insured shall immediately notify the

Insure[r] in writing of such changes." *Id.* ¶ 10.[1]  Prior to coverage under the Policy commencing

on December 1, 2021, Defendants did not revise their answer to Question 67.  *Id.* ¶¶ 11–12.

In 2017 and 2018, Mount Franklin ordered mogul machines, identified as Mogul 1 and

Mogul 2, which are used to manufacture food products, in anticipation of the 2020 opening of

operations at the San Jerónimo Facility.  *Id.* ¶ 23.  Pursuant to the CMA, Mount Franklin agreed

to manufacture Mars's starch mogul products—specifically gummy candies including Skittles

Starbursts, and Life Savers—at the San Jerónimo Facility.[2]  *Id.* ¶ 25.  The candy production did

not go as planned.  Three days after manufacturing began on August 9, 2021, Mount Franklin

discovered that its Mogul 2 machine had a damaged part and ordered a replacement part, which

was not installed until February 28, 2022.  *Id.* ¶¶ 28–29.  In the interim, between August 12,

2021 and the date the Policy was executed, October 29, 2021, Mount Franklin managers were

alerted to a significant number of instances of metal non-conformance or metal contamination in

the gummy candies.  *Id.* ¶ 30.  Between October 29, 2021 and December 1, 2021, Mount

Franklin managers were alerted to at least five additional incidents of metal non-conformance or

metal contamination.  *Id.* ¶ 34.  As noted above, these incidents were not reported to Plaintiff in

Defendants' application for insurance coverage.  *Id.* ¶ 33.  Throughout the remainder of 2021 and

early 2022, Mount Franklin discovered, but did not report, additional instances of metal non-

conformance and metal contamination events.  *Id.* ¶ 35. And, during that same time period,

numerous customer complaints were reported regarding metal and wires being found in gummy

candies manufactured by Mount Franklin on Mogul 2.  *Id.* ¶ 36.

---

[1] The Complaint states that the policy dictates, "the Insured shall immediately notify the Insured in writing of such changes."  Dkt. No. 1 ¶ 10.  From context, it is apparent that the Complaint contains a typographical error and the first reference to the Insured should refer be to the Insurer.
[2] A starch mogul is a machine that makes shaped candies or candy centers from syrups or gels. *See Cent. Lithograph Co. v. Eatmor Chocolate Co.*, 175 A. 697, 698 (Pa. 1934).

On May 13, 2022, Mars conducted a voluntary recall (the "Recall") in the United States of certain gummy candies due to the possible presence of metal fragments in these products manufactured by Mount Franklin. *Id.* ¶ 37. Mars subsequently sent a Notice of Claim letter to Defendants seeking recovery of an amount in excess of the Policy's limit of liability in connection with the Recall. *Id.* ¶ 38. Defendants tendered notice of the Recall to Plaintiff and seek recovery under the Policy for approximately $4.975 million. *Id.* ¶ 39. On November 10, 2023, Plaintiff notified Defendants that it was rescinding the Policy and tendering the Policy premium back to Defendants. *Id.* ¶ 40.

## PROCEDURAL HISTORY

Plaintiff filed this complaint on Monday, November 13, 2023, the first business day after notifying Defendants of the rescission of the Policy. *See* Dkt. No. 1. In its first cause of action, Plaintiff seeks a declaratory judgment that it is not liable on Defendants' claim for coverage of the loss arising out of the Recall. *Id.* ¶¶ 41–49. In its second cause of action, Plaintiff seeks a declaratory judgment that the Policy is rescinded and void *ab initio*. *Id.* ¶¶ 50–58. Plaintiff's theory is that Defendants were aware of numerous metal non-conformance and contamination events involving Mogul 2 prior to the effective date of the Policy on December 1, 2021 and prior to the Policy period, and knew or should have known that these events constituted an Accidental Contamination Incident or could give rise to an Incident under the Policy, and that coverage is thus excluded under Exclusion C in the Policy. *Id.* ¶¶ 42–43, 46. Exclusion C in the Policy excludes coverage "[f]or any Loss . . . arising out of, in whole or in part, any Incident or any circumstance that could give rise to an Incident, which [Defendants] discovered or was known, or should have reasonably been known, prior to the inception of the Policy Period." *Id.* ¶ 46. Plaintiff also asserts that Defendants are not entitled to coverage under the Policy for the claimed loss because the Policy's Condition N provides that "[a]s a condition precedent to coverage, you

must take every reasonable action necessary to prevent, mitigate, avoid or diminish any Loss covered under this policy or Incident." *Id.* ¶ 48. Because Defendants were aware of the non-conformance and contamination issues with Mogul 2 long before the Recall, Plaintiff alleges that Defendants failed to take every reasonable action needed to prevent, mitigate, avoid or diminish the Recall or the claimed loss. *Id.* ¶ 49. In its second cause of action, Plaintiff alleges that Defendants' answer to Question 67 and its later omission to correct the answer to Question 67 constituted material misrepresentations under N.Y. Insurance Law § 3105, entitling Plaintiff to rescission of the Policy. *Id.* ¶¶ 50–58.

On January 18, 2024, Elamex and Mount Franklin filed a competing coverage action against Allied World in the United States District Court for the Western District of Texas (the "Texas Action"). Dkt. No. 15-1. Elamex and Mount Franklin assert two causes of action: (1) breach of contract, *id.* ¶¶ 25–32; and (2) common law bad faith denial of coverage, *id.* ¶¶ 33–43. Elamex and Mount Franklin allege that, for a month after tendering its claims to Allied World, Elamex and Mount Franklin received and responded to various requests for documents and information from Plaintiff's claims adjuster. *Id.* ¶ 21. The complaint in the Texas Action refers to the fact that, on Friday, November 10, 2023, without any advance notice, Allied World caused a letter to be sent to Elamex's insurance broker denying coverage for Elamex and Mount Franklin's claim. *Id.* ¶ 22. Elamex notes in the Texas Action that it was the very next business day, Monday, November 13, 2023, that Plaintiff filed the action in this Court. *Id.* ¶ 24.

Defendants filed this motion to dismiss, along with a memorandum of law and the declaration of the Chief Financial Officer of Mount Franklin, on January 22, 2024. Dkt. Nos. 14–16. Plaintiff filed a memorandum of law in opposition to the motion on February 26, 2024.

Dkt. No. 28.  Defendants filed their reply memorandum of law in further support of the motion on March 18, 2024.  Dkt. No. 35.

## DISCUSSION

Defendants argue that the Court should decline to exercise jurisdiction over Plaintiff's claims under the Declaratory Judgment Act ("DJA") and, in the alternative, should transfer the case to the United States District Court for the Western District of Texas.  Dkt. No. 15.  The Court begins with the motion to transfer.  *See, e.g.*, *N. Brevard Cnty. Hosp. Dist. v. C.R. Bard, Inc.*, 648 F. Supp. 3d 401, 428 (N.D.N.Y. 2022) ("Where district courts are presented with both a motion to dismiss . . . and a motion to transfer venue . . . , they commonly address the venue motion first, and, where transfer is appropriate, leave the motion to dismiss to be decided by the transferee court." (alteration in original) (quoting *Hart v. Crab Addison, Inc.*, 2014 WL 2865899, at *2 (W.D.N.Y. June 24, 2014))); *see also Brown v. New York*, 947 F. Supp. 2d 317, 326 (E.D.N.Y. 2013) ("As the Court finds that transfer is appropriate, it defers decision on the Defendants' motion to dismiss for failure to state a claim to allow the transferee court an opportunity to consider the merits of the case."); *Saltzberg v. TM Sterling/Austin Assocs., Ltd.*, 746 F. Supp. 1225, 1228 (S.D.N.Y. 1990).  Here, "because there are 'strong considerations favoring transfer,' the Court resolves the transfer motion before the motion to dismiss." *Smartmatic USA Corp. v. Dominion Voting Sys. Corp.*, 2013 WL 5798986, at *5 (S.D.N.Y. Oct. 22, 2013) (quoting *Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*, 685 F. Supp. 346, 348 (S.D.N.Y. 1988)).

Because the Court begins with the motion to transfer, it considers material outside of the pleadings, including factual submissions such as declarations.  *See, e.g.*, *Enigma Software Grp.*

*USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 404 n.1 (S.D.N.Y. 2017); *Mohsen v. Morgan Stanley & Co. Inc.*, 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013).[3]

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The moving party bears the "burden of making out a strong case for transfer" by clear and convincing evidence.  *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010).  Courts have broad discretion to transfer cases on an individualized, case-by-case basis.  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988).  In considering a motion to transfer venue, the court engages in a two-part inquiry: first, the court asks "whether the action sought to be transferred is one that 'might have been brought' in the transferee court."  *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006).  If the action could have been filed in the proposed transferee district, the court evaluates "whether transfer is warranted using several factors relating to the convenience of transfer and the interests of justice."  *Id.*; *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 616 (S.D.N.Y. 2016).

I.    **This Action Could Have Been Brought in the Western District of Texas**

The first question—whether the action could have been brought in the district to which transfer is proposed—concerns whether the transferee court has jurisdiction over the case and whether venue is proper.  *See, e.g.*, *Enigma Software Grp.*, 260 F. Supp. 3d at 409; *Kiss My Face Corp. v. Bunting*, 2003 WL 22244587 (S.D.N.Y. Sept. 29, 2003).  Defendants argue, and Plaintiff does not dispute, that the Western District of Texas has jurisdiction over the case, and

---

[3] Accordingly, the Court rejects Plaintiff's request that it disregard the declaration submitted by Defendants.  *See* Dkt. No. 28 at 6.

that it may constitute a proper venue.  Defendants are subject to personal jurisdiction in the
Western District of Texas as they reside in the Western District of Texas.  Venue is proper in "a
judicial district in which any defendant resides, if all defendants are residents of the State in
which the district is located," 28 U.S.C. § 1391(b)(1), and accordingly venue is proper in the
Western District of Texas.

## II.    Transfer to the Western District of Texas Is Warranted

Plaintiff argues that Defendants' requested transfer should be denied under the "first-filed
rule."  Dkt. No. 28 at 13–14.  Alternatively, Plaintiff contends that Defendants have not met their
burden of showing by clear and convincing evidence that, on balance of convenience, transfer is
warranted.  *Id.* at 14.

### A.    The First-Filed Rule Does Not Apply Here

The "first-filed rule" instructs "that where there are two competing lawsuits, the first suit
should have priority, absent the showing of balance of convenience or special circumstances
giving priority to the second."  *First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 79 (2d
Cir. 1989) (internal alterations and quotation marks omitted); *see Semmes Motors, Inc. v. Ford
Motor Co.*, 429 F.2d 1197, 1203 (2d Cir. 1970) (Friendly, J.) (holding that the "general rule [is]
that in the absence of sound reasons the second action should give way to the first").  The rule
prevents "duplicative litigation by adhering to the inherently fair concept that the party who
commenced the first suit should generally be the party to attain its choice of venue," *Ontel
Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995), and thus
promotes "wise judicial administration, giving regard to conservation of judicial resources and
comprehensive disposition of litigation," *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342
U.S. 180, 183 (1952).  However, "the first-filed rule does not constitute an invariable mandate";
it is merely a "presumption that may be rebutted by proof of the desirability of proceeding in the

forum of the second-filed action." *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008); *see also Hanson PLC v. Metro Golwyn-Mayer Inc.*, 932 F. Supp. 104, 106 (S.D.N.Y. 1996).  And the rule is not to be applied in a "rigid" or "mechanical" way.  *Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 369 (S.D.N.Y. 2009).  "Rather, because 'the complex problems that can arise from multiple federal filings do not lend themselves to a rigid test,' the district court is instead required to 'consider the equities of the situation when exercising its discretion.'"  *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 539 (S.D.N.Y. 2013) (quoting *Naula v. Rite Aid of N.Y.*, 2010 WL 2399364, at *3 (S.D.N.Y. Mar. 23, 2010)).

The Second Circuit has recognized only two exceptions to the first-filed rule: "(1) where the balance of convenience favors the second-filed action, and (2) where special circumstances warrant giving priority to the second suit."  *Wausau*, 522 F.3d at 275 (internal citations and quotation marks omitted).  In turn, the Circuit identified two "special circumstances" that justify dismissal of what would otherwise be the first-filed action: (1) "where the first-filed lawsuit is an improper anticipatory declaratory judgment action"; or (2) where "forum shopping alone motivated the choice of the situs for the first suit," in the form that the "first-filing plaintiff [has] engage[d] in some manipulative or deceptive behavior, or the ties between the litigation and the first forum must be so tenuous or de minimis that a full 'balance of convenience' analysis would not be necessary to determine that the second forum is more appropriate than the first."  *Id.* at 275–76.  "The party opposing application of the first-filed doctrine has the burden to show that special circumstances justify an exception."  *Kellen Co., Inc. v. Calphalon Corp.*, 54 F. Supp. 2d 218, 221 (S.D.N.Y. 1999) (Parker, J.).

The presumption in favor of the first-filed action does not apply here.  Plaintiff asserts two causes of action for declaratory judgment: (1) that it is not liable on Defendants' claim for coverage of the loss arising out of the Recall, Dkt. No. 1 ¶¶ 41–49; and (2) that the Policy has been rescinded and was void *ab initio*, *id.* ¶¶ 50–58.  Both are improper.  Together, they establish that Plaintiff has filed an improper anticipatory declaratory judgment action and that Plaintiff has engaged in manipulative and deceptive behavior.

The first cause of action improperly seeks only a declaration regarding Plaintiff's obligations to pay damages already accrued.  *See, e.g.*, *Tang Cap. Partners, LP. v. BRC Inc.*, 661 F. Supp. 3d 48, 78 (S.D.N.Y. 2023) (finding that the plaintiff's "declaratory judgment claim also warrants dismissal because it is primarily directed to the past, not to the future"); *Lojan v. Crumbsie*, 2013 WL 411356, at *5 (S.D.N.Y. Feb. 1, 2013) ("[D]eclaratory judgment is inappropriate when the alleged wrong has already been committed."); 12 Moore's Fed. Prac. § 57.04[3], at 57-14 (hereinafter, "Moore's") ("[D]eclaratory relief is inappropriate to adjudicate past conduct, such as when the damages have already accrued."); 10B C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2751 (4th ed. 2023) (hereinafter, "Wright & Miller") ("The remedy made available by the [DJA] and Rule 57 is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued."); *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ir., Ltd.*, 676 F. Supp. 3d 233, 254 (S.D.N.Y. 2023) ("The main barrier in a declaratory judgment action is that it cannot be sued solely to adjudicate [a party's] past conduct." (quoting *KM Enters., Inc. v. McDonald*, 2012 WL 4472010, at *19 (S.D.N.Y. Sept. 25, 2012))).  "There is no basis for declaratory relief where only

past acts are involved." *Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 623

(S.D.N.Y. 2014) (quoting *Lojan*, 2013 WL 411356, at *5).

The Second Circuit has identified six factors that, "to the extent they are relevant in a

particular case," guide district courts:

> (1) whether the declaratory judgment sought will serve a useful purpose in
> clarifying or settling the legal issues involved; (2) whether such a judgment would
> finalize the controversy and offer relief from uncertainty; (3) whether the proposed
> remedy is being used merely for procedural fencing or a race to res judicata; (4)
> whether the use of a declaratory judgment would increase friction between
> sovereign legal systems or improperly encroach on the domain of a state or foreign
> court; (5) whether there is a better or more effective remedy; and (6) whether
> concerns for judicial efficiency and judicial economy favor declining to exercise
> jurisdiction.

*Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023) (internal

alterations, citations, and quotation marks omitted).  Each of the relevant *Admiral Insurance*

factors suggest that the first cause of action is improper and point against the exercise of

jurisdiction.  The declaratory judgment Plaintiff seeks would not "serve a useful purpose" and is

not necessary to "finalize the controversy and offer relief from uncertainty," *id.*, because

Plaintiff's "requested declaration goes only to liability for past damages, not the avoidance of

(nonspeculative) future damages," *Starr Indem. & Liab. Co. v. Exist, Inc.*, 2024 WL 503729, at

*1 (2d Cir. Feb. 9, 2024) (summary order).  Moreover, there is every reason to conclude that

Plaintiff's proposed remedy "is being used merely for procedural fencing or a race to res

judicata." *Admiral Ins.*, 57 F.4th at 99–100.  Plaintiff did not deny coverage until November 10,

2023, and even then did not inform Defendants directly of the denial, opting instead to send the

denial letter to the insurance broker, despite previously having communicated with Defendants

directly.  Dkt. No. 16 ¶¶ 19–21.  Defendants aver that the insurance broker did not deliver the

denial letter until the next business day—the same day that Plaintiff filed this lawsuit.  *Id.* ¶¶ 20–

21.  Accordingly, Defendants did not receive notice of the denial until after Plaintiff filed the

present action.  *Id.*  The conclusion is inescapable that Plaintiff delayed taking the action that could have given rise to a claim by Defendants for breach until it was ready to file this lawsuit, and then filed the lawsuit immediately thereafter before Defendants had a chance to consider whether they should initiate litigation.

A declaratory judgment is not cognizable in such a case.  A declaratory judgment may be appropriate, in effect, to quiet a claim creating uncertainty when the party with that potential claim fails to assert it.  *See, e.g.*, *Museum of Mod. Art v. Schoeps*, 549 F. Supp. 2d 543, 547–48 (S.D.N.Y. 2008); Moore's § 57.04[3], at 57-14; Wright & Miller § 2751.  But this case does not fall into that category.  Defendants did not fail to assert a claim.  Plaintiff refrained from taking the action, a declination of coverage, that would give rise to a claim by Defendants, and then filed this lawsuit as a gambit ostensibly to prevent Defendants from asserting their own claim.  In other words, Plaintiff sought to use the DJA as an artifice to decide—as the party in breach— both the time and the place where its liability would be determined.  The other *Admiral Insurance* factors either have no special relevance or also cut against the exercise of jurisdiction. There is no preexisting state-court action, so that factor is irrelevant, and judicial economy has no "special relevance" where the dispute between the parties can be as easily adjudicated in Texas as here.  *Exist*, 2024 WL 503729, at *2.  As to whether a "better or more effective remedy" lies elsewhere, Plaintiff "is entitled to the same remedy—a declaration of nonliability— whether it presents its claims as the plaintiff in a declaratory judgment action or as a defendant in an action for breach of contract."  *Id.*

What this Court said in *Starr Indemnity & Liability Co. v. Exist, Inc.*, 2023 WL 4029821 (S.D.N.Y. June 14, 2023), *aff'd*, 2024 WL 503729 (2d Cir. Feb. 9, 2024) (summary order), is equally applicable here:

> [T]o allow the instant case for declaratory judgment to proceed would, in effect, allow the insurer to pick the forum for litigation, not the insured, in the vast majority of cases. If an insurer may deny coverage through the initiation of a lawsuit, as Plaintiff did here, and if the injurer also is able to bring a declaratory action on a claim that it is not liable for already accrued claims, then the insurer will be able to beat the insured to the courthouse in every case and invoke the general presumption in favor of the first-filed action. The effect would be that any insurer in breach could deprive its counterparty of the prerogative to choose whether, when, and where to sue. The result ineluctably would be an unseemly race to the courthouse.

*Id.* at *5 (internal citations and quotations omitted).

The plaintiff in *Exist* was an insurance company that sought a declaratory judgment that it was not liable under a marine cargo insurance policy that it had issued to the plaintiff for two notices of loss. As here, after all the damages had accrued on the claims and after the plaintiff had investigated the claims, the plaintiff sent a letter to plaintiff about the claim, and the next business day filed the declaratory judgment action informing the defendant—its insured—that the claims were denied. The Court declined to exercise jurisdiction under the DJA, noting that a declaratory judgment was not "necessary to clarify and settle the legal relations of the parties or to afford relief from uncertainty," because the losses had already accrued and there was no threat of future damages. *Id.* at *6. The declaratory judgment "cease[d] to have a forward-looking function impacting intended future conduct." *Id.* at *5. The Court also concluded that the proposed remedy was being used or would be used merely for procedural fencing or a race to res judicata. *Id.* The relief sought be the insurer plaintiff "serve[d] no purpose other than as a method for Plaintiff to preempt Defendant—the natural plaintiff who could sue for damages on a

breach of contract theory—from filing their own suit and choosing the forum." *Id.* This case is on all fours.[4]

Plaintiff's second cause of action for a declaratory judgment that "the policy is rescinded and void ab initio," Dkt. No. 1 ¶ 58, is no less improper or manipulative. It too bespeaks not an effort to quiet a claim creating uncertainty, but an artifice and device to defeat the choice of the party who has suffered a breach to choose the time and the place where it will sue. Plaintiff claims that its cause of action seeks a determination that would "avoid *any future obligations* under the Policy, including obligations to investigate other, future claims or indemnify Elamex against such claims." Dkt. No. 28 at 7. To the extent that Plaintiff would mean that its suit was filed to protect it against claims other than that being asserted in Texas, the argument is

---

[4] Plaintiff attempts to distinguish its first cause of action from the claims for declaratory relief over which the Court declined jurisdiction in *Exist* based on a single factor not raised or considered in the earlier case. Plaintiff argues that a declaratory judgment action should be made available to an insured who seeks "to avoid or minimize potentially years of interest accruing at 9% per annum." Dkt. No. 28 at 9 (citing N.Y.C.P.L.R. §§ 5001, 5004). The argument is not persuasive. Prejudgment interest under the C.P.L.R. is entitled to compensate an injured party for the other party's use of its money from the moment the cause of action accrued until the time of judgment. Siegel's N.Y. Practice § 411. An award of prejudgment interest is not forward-looking; it is intended to provide full relief to the injured party for damage that has already been done. *See, e.g.*, *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195 (1995) ("The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss."); *see also Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 55 (2d Cir. 2009); *Taafe v. Life Ins. Co. of N. Am.*, 769 F. Supp. 2d 530, 536 (S.D.N.Y. 2011). The running of interest from the date of accrual is based on one of two assumptions: that a party who has an accrued and meritorious claim will not sit on his rights and allow another party the enjoyment of his resources, but will bring suit; or that if he delays to ensure that his claim is well-founded, he will not be penalized for the care within which he approached litigation. It also is based on the presumption that the rate of interest is that which will fairly compensate the injured party for the loss of his money during the time when it cannot be recovered. *See, e.g.*, *In re Arcapita Bank B.S.C.(c)*, 633 B.R. 723, 739–40 (S.D.N.Y. 2007). A party in breach can pretermit the running of interest after being sued by remediating his breach. He can avoid or minimize the running of interest even before that date by coming into compliance with his contractual obligations. *See, e.g.*, *Rec. Club of Am., Inc. v. United Artists Recs., Inc.*, 701 F. Supp. 71 (S.D.N.Y. 1988).

facetious.  Defendants assert, without contradiction, that their claim in the Texas Action would exhaust the policy limits.  Dkt. No. 35 at 1.  As Plaintiff avers in its complaint, Defendants tendered notice of the Recall to Plaintiff and sought recovery under the Policy for approximately $4.975 million.  Dkt. No. 1 ¶ 39.  The Policy's aggregate limits is $5 million.  *Id.* ¶ 24; Dkt. No. 15-1.  The Policy covers the period December 1, 2021 to December 1, 2022.  Dkt. No. 1 ¶ 13; Dkt. No. 15-1.  As a condition precedent to coverage, Defendant is required to have notified Plaintiff "during the Policy Period or sixty (60) days after the expiration of the Policy Period of any Incident that may involve the policy."  Dkt. No. 15-1.  That period already has run.  Plaintiff has not identified any claim or potential claim for which it seeks protection other than the claim for damages that already occurred and are already liquidated, which is being litigated in Texas.  In short, the second cause of action—just like the first—seeks only to protect Plaintiff for an alleged wrong that has already been committed—Plaintiff's refusal to cover Defendants' claim arising from the Recall.  *See* Dkt. No. 28 at 7.

Plaintiff further claims that it is the "natural" plaintiff because it was injured by being induced to issue a Policy based on false representations, *id.* at 9, and that declaratory relief or at least an action for rescission in which it would be the plaintiff is the proper remedy for the wrong that it suffered, *id.* at 7.  But even if the second cause of action were not entirely backward-looking, the relief it seeks is not properly obtained through a declaratory judgment.  A declaratory judgment "declares the rights and other legal relations of a[n] interested party."  28 U.S.C. § 2201(a); *see Farrakhan v. Anti-Defamation League*, 2024 WL 1484449, at *8 (S.D.N.Y. Apr. 5, 2024).  It does not alter those rights.  But, while Plaintiff frames his request as seeking a declaration of existing rights—that the Policy is void *ab initio*—the request in reality is for an order that would alter the relationship between the parties and not declare that relationship.

Although the cases sometimes use the language "void *ab initio*," a claim of material misrepresentation under N.Y. Insurance Law § 3105 gives rise to the conclusion that the Policy is *voidable*, not void.  *See, e.g., Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001); *see also* Restatement (Second) of Contracts, § 164 ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.").  The insurer, confronted with a misrepresentation, may still affirm or ratify the Policy.  *See, e.g., Prudential Ins. Co. of Am. v. BMC Indus., Inc.*, 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986); *see also Principal Life Ins. Co. v. Locker Grp.*, 869 F. Supp. 2d 359, 366 (E.D.N.Y. 2012).  An insurer's claim for relief from the contractual obligations imposed by the policy is waived if the insurer "fails to act within a reasonable amount of time after learning of the misrepresentation." *Nat'l Specialty Ins. Co. v. 218 Lafayette St. Corp. LLC*, 2008 WL 629994, at *6 (S.D.N.Y. Mar. 10, 2008) (citing *Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan*, 77 F.3d 48, 52 (2d Cir. 1996)).  The insurer may sue for an order of rescission, but until that relief is granted, the Policy creates legal obligations.  *Adams v. Suozzi*, 433 F.3d 220, 227 (2d Cir. 2005) (quoting *Sphere Drake*, 263 F.3d at 31); *cf. Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Hist. Dist. Comm'n*, 934 F.3d 238, 243 (2d Cir. 2019) (material alteration to legal relationship where a party's behavior is modified); *I.O.B. Realty, Inc. v. Patsy's Brand, Inc.*, 2020 WL 55182230, at *9 (S.D.N.Y. Sept. 13, 2020) ("The plaintiffs sought to alter the legal relationship between the parties by seeking a 'declaratory judgment of non-infringement of the mark.'").[5]

---

[5] With Plaintiff failing the threshold requirements under *Admiral Insurance*, the remaining factors need not be considered because they are completely irrelevant absent any adequate declaration sought.  *See Exist*, 2024 WL 503729, at *2 (holding that it is within a court's discretion to omit consideration of factors that are "irrelevant" to a particular case).

The Court recognizes that there is language in *Wausau* that "for a declaratory judgment action to be anticipatory, it must be filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action." 522 F.3d at 276. But that language must be understood in its factual context. The insurer plaintiff in *Wausau* sought a declaration that it was not obligated to provide coverage in connection with an ongoing litigation. *Emps. Ins. of Wausau v. News Corp.*, 439 F. Supp. 2d 328, 333 (S.D.N.Y. 2006); *see also* 522 F.3d at 274. The declaratory judgment action properly sought to quiet a claim that the insured could have brought apparently for costs that it was then incurring. Couch on Insurance § 227:34. In that context, the Circuit's requirement of a "threat of litigation" makes sense. There would have been a basis for the insured to threaten litigation and something to be inferred from the fact that the insured did not do so. It was for that reason that the Court did not apply the precept that it otherwise recognized that "a plaintiff should not be permitted to file 'a preemptive action in order to deprive the natural plaintiff of its choice of forum.'" *Wausau*, 522 F.3d at 275 n.3 (quoting 17 Moore's Fed. Prac. § 111.13(1)(c)(i)). On the facts in *Wausau*, the lawsuit was not an "improper anticipatory declaratory judgment action." *Id.* at 275.

In this case by contrast, Plaintiff's action is an improper declaratory judgment filed preemptively to deprive the natural plaintiff of its choice of forum. *Id.* at 275 n.3. The insured never had the opportunity to threaten litigation, and were not incurring continuing losses. Under the Policy, Plaintiff had an obligation to pay on a loss following an incident only "as soon as practicable" after its "receipt of all information [that it] requested" and no entity had a right to sue unless all of the Policy's terms had been complied with. Dkt. No. 15-1. Defendants thus did not have a right to sue because Plaintiff declined coverage essentially at the same time that it filed the instant lawsuit. Based on the facts before the Court, the insurer used the contrivance of

an investigation to frustrate the ability of the insured to threaten suit and to choose the place and time it would be sued for breach of contract. *See Café La Trova LLC v. Aspen Specialty Ins. Co.*, 519 F. Supp. 3d 1167, 1175–76 (S.D. Fla. 2021) (suggesting that suit was not ripe while insurer was still investigating claim). At the very least, Plaintiff's conduct was manipulative and deceptive. If given weight here, the treatment of Plaintiff's lawsuit as the first-filed action would give rise to the very evils that the Circuit warned against in the *Wausau* footnote and that this Court discussed in *Exist*—it would permit the insurer in every case to choose not only when it could be sued but where the suit against it for breach of contract would be litigated.[6] In light of the foregoing, the Court concludes that the Texas Action, not this action, is properly considered the first-filed action.

### B.    Balance of Convenience

Shorn of the presumptions created by the first-filed rule, this motion is easily resolved. The ties between the dispute at issue and Texas are far from "tenuous or de minimis." *See Wausau*, 522 F.3d at 276. The Court will transfer this action to the Western District of Texas where that court can decide whether to consolidate it with the case already filed by Defendants against Plaintiff there, to stay this action, to dismiss it, or to take some other action. *See, e.g.*, *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, (S.D.N.Y. 2004); *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994).

"[T]he factors relevant to the balance of convenience analysis [under the first-filed rule] are essentially the same as those considered in connection with motions to transfer venue

---

[6] Indeed, courts outside of the Circuit have declined to apply the first-filed rule where an insurer filed suit seeking declaratory relief prior to denying the insured's claim and in apparent anticipation of a suit in another forum. *See, e.g.*, *Great Am. E&S Ins. Co. v. Butterball, LLC*, 2018 WL 6037516, at *2 (E.D.N.C. Nov. 15, 2018); *Yoder v. Heinold Commodities, Inc.*, 630 F. Supp. 756, 760 (E.D. Va. 1986).

pursuant to 28 U.S.C. § 1404(a)." *Wausau*, 522 F.3d at 275.  Courts generally consider the following factors:

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Sec. & Exch. Comm'n v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 226–27 (S.D.N.Y. 2015) (quoting *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, 2009 WL 2252116, at *4 (S.D.N.Y. July 28, 2009)).  "There is no rigid formula for balancing these factors and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000); *see Smart Skins LLC v. Microsoft Corp.*, 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015) ("No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case.").

In this case, Defendants aver without contradiction that "*all* of the [Defendants'] fact witnesses who have relevant knowledge (and thus might be called as witnesses) reside in either Texas or nearby, in Mexico."  Dkt. No. 35 at 9 (emphasis in original); *see* Dkt. No. 15 at 13–14. Plaintiff also does not meaningfully refute Defendants' contention that the events giving rise to this action occurred in Texas.  Accordingly, the "locus of operative facts,"—a "primary factor" in deciding a motion to transfer venue, is Texas.  *ZPC 2000, Inc. v. SCA Grp., Inc.*, 86 F. Supp. 2d 274, 279 (S.D.N.Y. 2000); *Smart v. Goord*, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998) ("The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer.").  Finally, Defendants assert without contradiction that "[a]ll of [their] documents, files and records pertaining to the recall Incident are located in Texas."  Dkt. No. 15 at 14; *see* Dkt. No. 16 ¶¶ 24, 27.  Although the Policy contains a choice-of-law provision which states: "This

19

policy, and any dispute, controversy or claim arising out of, or relating to, this policy, shall be governed and construed in accordance with the internal laws of the State of New York," Dkt. No. 15-1 at 37, and a federal court in New York is presumed to have greater familiarity with New York law than the federal court of another state, *see, e.g.*, *JVC Prof'l Prods. Co. v. HT Elec., Inc.*, 1999 WL 1080280 (S.D.N.Y. Dec. 1, 1999), Plaintiff has not argued, nor could it persuasively, that this case turns on nuanced issues of New York law that this Court is materially more qualified to apply than a federal court in Texas would be, *see, e.g.*, *Michel v. Petco Animal Supplies Stores, Inc.*, 404 F. Supp. 3d 685, 691 (E.D.N.Y. 2017); *Enigma Software Grp.*, 260 F. Supp. 3d at 412.

"[O]ne of the most important factors considered by courts in evaluating a motion to transfer is the existence of similar litigation in the transferee district." *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 660 (S.D.N.Y. 1998); *see Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 397 (S.D.N.Y. 2014) ("One factor traditionally considered in deciding whether a transfer is warranted in the 'interest of justice' is whether related litigation can be consolidated by transference to a single forum." (quoting *Tucker Anthony, Inc. v. Bankers Tr. Co.*, 1994 WL 9683, at *8 (S.D.N.Y. Jan. 10, 1994))).  Indeed, "[i]t is well established that the existence of a related action pending in the transferee court weighs heavily towards transfer." *APA Excelsior III L.P. v. Premiere Techs., Inc.,* 49 F. Supp. 2d 664, 668 (S.D.N.Y. 1999); *see also Cap. Venture Int'l v. Network Com., Inc.*, 2002 WL 417246 (S.D.N.Y. Mar. 15, 2002).  The action pending before this Court is undisputedly related to the action pending in the Western District of Texas— it involves the same parties, the same contract, and the same underlying events.  *See, e.g.*, *Mastr Asset Backed Sec. Tr. 2007-WMC1 v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 424 (S.D.N.Y. 2012).  The claims Plaintiff asserts here would be compulsory counterclaims there.  *See, e.g.*,

*Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991).  "The benefits of consolidating related cases in a common forum are often substantial."  *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Am. Boat Co., LLC*, 2012 WL 1382278, at *3 (S.D.N.Y. Apr. 20, 2012).  "Such consolidation may advance the strong policy interests of achieving efficient pretrial discovery, avoiding duplicative litigation, and avoiding inconsistent results."  *Id.*; *see Robertson v. Cartinhour*, 2011 WL 5175597, at *4 (S.D.N.Y. Oct. 28, 2011); *Kreinberg v. Dow Chem. Co.*, 496 F. Supp. 2d 329, 331 (S.D.N.Y. 2007); *Goggins v. All. Cap. Mgmt., L.P.*, 279 F. Supp. 2d 228, 234–35 (S.D.N.Y. 2003); *see also Recoton Corp. v. Allsop, Inc*., 999 F. Supp. 574, 578 (S.D.N.Y. 1998) (transfer warranted where transfer will prevent duplicative litigation and avoid the risk of inconsistent results).  Where "two cases involving the same issues are simultaneously pending in different district courts," consolidation of the cases in one court is proper.  *Barnet v. Elan Corp*., 236 F.R.D. 158, 164 (S.D.N.Y. 2005) (citing *Cont'l Grain Co. v. Barge-FBL-585*, 364 U.S. 19, 26 (1960)).  Courts have generally transferred cases where, as here, both cases involve interpretation of the same contract.  *See, e.g.*, *Eres N.V. v. Citgo Asphalt Refining Co.*, 605 F. Supp. 2d 473, 483 (S.D.N.Y. 2009) ("[A] transfer would allow one court to perform a full analysis of the documents and the circumstances surrounding their execution, and that court can then render one ruling interpreting all of the contracts in their entirety."); *AIG Fin. Prods. Corp. v. Pub. Util. Dist. No. 1 of Snohomish Cnty.*, 675 F. Supp. 2d 354, 372–73 (S.D.N.Y. 2009) (granting transfer to district with related case involving same parties, agreements, facts and circumstances).  Giving weight to the choice of forum of the "natural plaintiff," this case belongs in Texas.  The balance of convenience favors Texas.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendants have met their burden of demonstrating by clear and convincing evidence that transfer is appropriate.  Accordingly, Defendants' motion to transfer this action to the Western District of Texas is GRANTED.  The motion to dismiss is denied as moot.[7]

The Clerk of Court is respectfully directed to close Dkt. No. 14.

SO ORDERED.

Dated: May 16, 2024
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge

---

[7] The Court need not address Plaintiff's request that it be permitted to amend its complaint to seek the affirmative relief of an order of rescission.  Dkt. No. 28 at 8 n.4.